UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

RAUL O. ORTIZ MOLINA,

    Plaintiff,

v.                                         Civil No. 05-1181 (JAF)

RIMCO, INC.,

    Defendant.

**OPINION AND ORDER**

Plaintiff, Raúl Ortíz Molina, brings the present complaint against Defendant Rimco, Inc., alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301-33 (2002 & Supp. 2005), and various state laws. Docket Document No. 1.

Defendant Rimco moves for summary judgment, averring that Plaintiff has failed to establish a prima facie case of discrimination under USERRA, or, alternatively, that its reason for terminating Plaintiff's employment was legitimate and non-discriminatory. Docket Document Nos. 125, 152. Plaintiff opposes the motion. Docket Document Nos. 139, 156.

**I.**

**Factual and Procedural Synopsis**

Unless otherwise indicated, we derive the following factual summary from the pleadings and statements of facts submitted by the parties in their summary judgment and opposition motions. Docket

Civil No. 05-1181 (JAF)                                                -2-

Document Nos. 125, 137, 139, 151, 152. The procedural history of the present case has been outlined in our Opinion and Order of November 29, 2005, Docket Document No. 119, and we, therefore confine our recitation of the facts to those relevant for summary judgment purposes.

In August 1998, Plaintiff Ortiz was hired as a sales officer by Defendant Rimco, a corporation dedicated to the renting and selling of heavy machinery. In 1999, Defendant Rimco promoted Plaintiff to manage a new store located in Arecibo, Puerto Rico, increasing his responsibilities, salary, and offering him an annual year-end bonus.

Plaintiff has been a member of the Puerto Rico Army National Guard since 1982, and is currently ranked a Staff Sergeant. Throughout his employment with Rimco, Plaintiff's National Guard obligations required him to attend military training sessions one weekend each month and two weeks each year. In the Fall of 2002, Plaintiff's National Guard Unit received news of possible activation and consequently increased its military training exercises, requiring more time in service from its Guardsmen. According to Plaintiff, José Ríos, the General Manager of Rimco, and Orlando Maldonado, Manager of Rimco's Sales Department, questioned him regarding the extra time away from Rimco, and asked Plaintiff whether there was anything he could do to obviate or

avoid his military duties should he be called to serve for an extended period.

On February 14, 2003, Plaintiff's National Guard unit was activated and Plaintiff was shipped to the United States to begin his tour of duty. Plaintiff's military duties led him to North Carolina, Germany, and Kuwait, before he was returned to Puerto Rico in December 2003. During Plaintiff's absence from Rimco, Emilio Morales, Sales Manager of a Rimco store located in Ponce, Puerto Rico, took over Plaintiff's supervisory duties for the Arecibo store.

On January 2, 2004, Ortiz returned to work as sales manager of the Rimco Arecibo store. In March 2004, Morales resigned, and Plaintiff was assigned to take over the supervisory duties of the Ponce store, in addition to his existing managerial responsibilities. During this time, according to Plaintiff, Maldonado frequently questioned him about the possibility that Plaintiff's National Guard unit would be redeployed, and repeatedly asked whether Plaintiff had plans to retire from the National Guard.

On October 13, 2004, an incident occurred involving two Rimco mechanics, subordinates of Plaintiff, who stole a tool from a Rimco client. Plaintiff met with Ríos and Maldonado to discuss his management of the situation and to determine what action should be taken against the mechanics. On October 28, 2004, Ríos informed

Plaintiff that he was being terminated immediately because management believed he had improperly handled the theft incident and had lost faith in him.

On February 11, 2005, Plaintiff Ortiz, his spouse, their conjugal partnership, and their minor child filed the present complaint against Defendant Rimco, Ríos, and Gilberto Rivera, a sales representative of Rimco. Docket Document No. 1. In August 2005, Ríos and Rivera reached a settlement agreement with Plaintiff and his family, dismissing Plaintiffs' case against them with prejudice, but leaving the case against Rimco intact. Docket Document No. 90.

On November 29, 2005, this court granted Rimco's motion to dismiss in part, Docket Document Nos. 20, 98, holding that Plaintiff's spouse and minor child did not have a right to separate damages under USERRA, and dismissing the portions of the original complaint that sought mental and emotional damages. Docket Document 129. On December 12, 2005, Defendant Rimco filed a motion for summary judgment, Docket Document Nos. 124, 125, to which Plaintiff replied on February 16, 2006. Docket Document Nos. 137, 139. Defendant filed a reply to Plaintiff's opposition on March 16, 2006, Docket Document Nos. 151, 152, and Plaintiff filed a surreply on April 7, 2006. Docket Document No. 156.

**II.**

**Motion for Summary Judgment Standard under Rule 56(c)**

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c). A factual dispute is "genuine" if it could be resolved in either party's favor, and "material" if it potentially affects the case's outcome. Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party carries the burden of establishing that there is no genuine issue as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." See id. at 325. The burden has two components: (1) an initial burden of production that shifts to the non-moving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. Id. at 331.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for

trial," FED. R. CIV. P. 56(e), and may not simply rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Cepero-Rivera v. Fagundo, 414 F.3d 124 (1st Cir. 2005) (quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 613 (1st Cir. 1994)). Summary judgment exists "to pierce the boilerplate of the pleadings and assess the proof in order to determine the need for trial." Euromodas, Inc. v. Zanella, 368 F.3d 11, 17 (1st Cir. 2004) (citing Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

**III.**

**Analysis**

Congress enacted USERRA, like its predecessor, the Veterans' Reemployment Rights Act (VRRA), to encourage noncareer service in the military by minimizing negative repercussions in the civilian workplace potentially prompted by military service. See S. Rep. No. 1477 90th Cong., 2d Sess. (1968); Boyle v. Burke, 925 F.2d 497, 502 (1st Cir. 1991) (VRRA was enacted "to protect potential and existing reservists from policies that deter employees from joining the reserves."); see also Figueroa Reyes v. Hosp. San Pablo del Este, 389 F. Supp. 2d 205, 211 (D.P.R. 2005) (citing Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 395 n.7 (D.P.R. 1999)) ("USERRA's legislative history established that the extensive body of case law that had evolved under VRRA should remain in full force and effect when interpreting the provisions of USERRA."). USERRA

prohibits adverse employment actions in which the employee's membership in the uniformed services is a "motivating factor" in the employer's action. 38 U.S.C. § 4311(c). <u>Figueroa Reyes</u>, 389 F.Supp. 2d at 211.

Plaintiff alleges that after he returned from his military tour of duty, Defendant Rimco violated USERRA by: (1) increasing Plaintiff's work duties without increasing compensation; (2) failing to give Plaintiff a raise that other sales managers received;(3) subjecting Plaintiff to a hostile work environment; and (4) terminating Plaintiff due to his military status. <u>Docket Document Nos. 139, 156</u>. Defendant moves for summary judgment, arguing that Plaintiff has failed to establish a prima facie case under USERRA, and that Plaintiff was terminated for just cause. <u>Docket Document Nos. 125, 152</u>. We examine each of Plaintiff's claims in light of Defendant's summary judgment motion.

**A.   <u>Adverse Changes to Plaintiff's Work Duties</u>**

Plaintiff claims that his assignment to manage Rimco's Ponce store after the former manager had resigned, in addition to his existing management duties for Rimco's Arecibo store, amounted to a constructive demotion because his work duties were dramatically increased without any corresponding change in his remuneration. <u>Docket Document No. 139</u>.

For a plaintiff to establish a prima facie case of employment discrimination under USERRA, and thereby survive summary judgment,

Civil No. 05-1181 (JAF)                                              -8-

he must show that his membership or participation in the uniformed services was the substantial or motivating factor behind the employer's adverse employment action. Figueroa Reyes, 389 F.Supp.2d at 212 (citing Barreto, 62 F. Supp. 2d at 391). An employer may escape liability by raising the affirmative defense that it would have made the same decision regardless of the employee's veteran status. Id. (citing Gummo v. Village of Depew, 75 F.3d 98, 106 (2nd Cir. 1996)).

Despite not suffering any loss in wages, the increase in Plaintiff's job duties due to being placed in charge of Rimco's Ponce store, which resulted in a more erratic schedule and longer working hours, may be considered an adverse employment action prohibited by USERRA. See Carlson v. N.H. Dep't of Safety, 609 F.2d 1024, 1027 (1st Cir. 1979) (finding that a shift reassignment requiring weekend work, night work, and longer hours constituted an employment action that might deter an employee from participating in the military reserves); Hill v. Michelin N. Am., Inc., 252 F.3d 307, 313 (4th Cir. 2001) (finding that a regular schedule is "properly viewed as an advantage of the job under USERRA's definition of 'benefit of employment.'"); Allen v. United States Postal Serv., 142 F.3d 1444, 1447 (Fed. Cir. 1998) (concluding that a position's "desirable" schedule with regular daytime hours "is an 'incident or advantage of employment'").

Civil No. 05-1181 (JAF)                                              -9-

Plaintiff, having established that he has suffered an adverse employment action covered by USERRA, contends that the action was motivated by Defendant's discriminatory intent, which can be inferred by the short time between his return from military duty and the change of duties, and from the fact that Plaintiff's supervisors repeatedly questioned whether his military duty was necessary. Docket Document No. 139. We are skeptical that these actions alone suffice to discharge Plaintiff's prima facie burden of showing that Defendant was motivated by a discriminatory animus in assigning Plaintiff managerial duties for the Ponce store.

However, even if we were to assume arguendo that Plaintiff had established a prima facie case, Defendant's affirmative defense that it would have made the same transfer in the case of a non-military manager is clearly supported by the record. Plaintiff concedes that during his military tour of duty, Morales, the manager of Rimco's Ponce store, was tasked with Plaintiff's managerial duties for the Arecibo store. Docket Document No. 139-2. There is nothing in the record to imply that Morales has any connection to the uniformed services, or that he was given any additional compensation for the increase in his managerial duties.

Defendant treated Morales, a non-military employee, in the same manner as Plaintiff when it faced a managerial vacancy at one of its stores. Defendant has shown that its decision regarding managerial assignments was consistent regardless of a particular

employee's veteran status. Therefore, Defendant's motion for summary judgment as to Plaintiff's claims of adverse changes in his work conditions must be granted. Docket Document Nos. 125,152.

**B.   Lack of Raise**

Plaintiff next alleges that after returning from National Guard duty, Defendant violated USERRA by failing to raise Plaintiff's salary or award him a bonus for the years 2003 and 2004. Docket Document No. 139. Under USERRA, a veteran who is reemployed is entitled to the seniority and other rights and benefits that the person had on the date he commenced military service, plus the additional seniority and rights and benefits that he would have attained had he remained continuously employed. 38 U.S.C. § 4316(a). Plaintiff claims that since his supervisors were not properly able to evaluate his performance due to the absence caused by his military duties, their ultimate decision not to increase his salary amounts to a USERRA violation. Docket Document No. 139.

USERRA, however, only requires those employers who have a seniority system in place to restore returning service members to their proper place on the seniority ladder. Rogers v. City of San Antonio, 392 F.3d 758 (5th Cir. 2004). Defendant asserts that no such seniority system exists at Rimco and that salary increases or bonuses are not an automatic benefit of employment. Docket Document No. 152. Plaintiff's assertion that he would have been one of the

Civil No. 05-1181 (JAF)                                              -11-

managers who received a raise had he not been called to duty is wholly speculative and not protected under USERRA. See Alabama Power Co. v. Davis, 431 U.S. 581, 585 n.8 (1977) (stating that 9(c) of the VRRA, a parallel provision to § 4316(a) of USERRA, does "not guarantee the returning serviceman a perfect reproduction of the civilian employment that might have been his if he had not been called to the colors. Much there is that might have flowed from the experience, effort, or chance to which he cannot lay claim under the statute. Section 9(c) does not assure him that the past with all its possibilities of betterment will be recalled.")

It is conceded that no automatic escalator system was in place at Rimco when Plaintiff returned to work, and as such, § 4316(a) of USERRA is not applicable. Therefore, Plaintiff's claim for relief based on his not receiving a pay raise upon reemployment is not covered by USERRA, and must, therefore, be summarily dismissed. Docket Document Nos. 125, 152.

**C.   Hostile Work Environment Claim**

Plaintiff next claims that he was subjected to a hostile work environment after he returned to Rimco from his Army Reserve duty. Docket Document No. 139. USERRA prohibits the denial of "any benefit of employment by an employer" to members of uniformed service based on their membership and/or performance of service, but "does not specifically prohibit an employer from subjecting an employee to harassment or a hostile work environment due to the

Civil No. 05-1181 (JAF)                                                -12-

employee's military status." 38 U.S.C. § 4301; Figueroa Reyes, 389 F. Supp. 2d at 212 (internal citations omitted).

While some courts in other districts have held that hostile work environment claims are cognizable under USERRA, the First Circuit has remained silent on the issue. See e.g., Petersen v. Dep't of Interior, 71 M.S.P.R. 227 (1996) (finding that harassment based upon prior military service violated USERRA); Vickers v. City of Memphis, 368 F. Supp. 2d 842 (D. Tenn. 2005) (noting the absence of district or appellate court precedent on the issue of "whether freedom from a hostile work environment is contemplated within the term 'benefit of employment' in the USERRA"; finding the Merit Systems Protection Board's findings in Petersen persuasive and adopting its conclusion that the USERRA provides a cause of action for harassment); cf. Diaz-Gandia v. Dapena-Thompson, 90 F.3d 609, 614 (1st Cir. 1996) ("VRRA § 2021 (b)(3) is designed to deter discriminatory employment actions like discharge and demotion") (internal citations excluded).

In the case at hand, Plaintiff's hostile work environment claims allege that he was repeatedly questioned about his military duties, his supervisory authority over his employees was diminished by other Rimco employees, and decisions he made were questioned or ignored by fellow employees. Docket Document No. 139. As in Figuroa Reyes, we feel that even accepting arguendo that hostile work environment claims are cognizable under USERRA, there is no

Civil No. 05-1181 (JAF)                                              -13-

support for such a claim in the present case.  389 F. Supp. 2d at 212.

To assert a hostile work environment claim under an analogous federal statute, such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (1994 & Supp. 2003), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (1994 & Supp. 2003), or the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165 (1994 & Supp. 2003), a plaintiff must "show that [he] was subjected to severe or pervasive harassment that materially altered the conditions of [his] employment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). In a hostile work environment inquiry, we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998); see also Patterson v. McLean Credit Union, 491 U.S. 164 (1989) (Title VII precludes "harassment that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment"). In characterizing the negative workplace environment, courts have drawn a continuum between rudeness and ostracism, on one side of the spectrum, and severe or pervasive harassment on the other side, generally finding that "rudeness or ostracism, standing alone" is

insufficient to support a hostile work environment claim and that severe or pervasive harassment is actionable. Noviello, 398 F.3d at 92; Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 52 n.12 (1st Cir. 1999).

Plaintiff's contention that he was frequently questioned about his military status, its necessity, and whether he could avoid future service commitment may be probative of the fact that Plaintiff's military status concerned his managers, but the comments alone do not rise to the severity and pervasiveness necessary to sustain a hostile work environment charge. See e.g. Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 509 (5th Cir. 2003) (finding that a disabled employee who was told by her employer that "she better get better this time" and that he would "no longer tolerate her health problems" was not subjected to a hostile work environment under the ADA); McConathy v. Dr. Pepper/Seven-Up Corp., 131 F.3d 558, 564 (5th Cir. 1998) (finding that an employer's boorish behavior toward an employee regarding the slow pace of the employee's recovery from a disease, his reassignment of work away from her, and his insensitivity toward her need for surgery and time to recuperate was not sufficient as a matter of law to state a claim of hostile environment harassment).

Plaintiff additionally alleges that other managers at Rimco, on occasion, gave orders to employees who were under his

Civil No. 05-1181 (JAF)                                              -15-

supervision, and also claims that his input was not valued or considered on certain occasions. Docket Document No. 134. While Plaintiff may sincerely have been bothered by these actions, which he claims undermined his managerial role within the organization, Plaintiff's claims clearly fail to describe conduct so severe or pervasive that a reasonable person would find it hostile or abusive. Figueroa Reyes, 389 F. Supp. 2d at 213. "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission" does not elevate that act to an actionable harm. Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). Plaintiff has failed to meet his burden required to establish a valid hostile work environment claim, and consequently, we must grant Defendants' motion for summary judgment as to that portion of the complaint. Docket Document Nos. 125,152.

**D.   Wrongful Termination**

Plaintiff's final claim alleges that his termination from employment was motivated in part by his membership in the National Guard. Docket Document Nos. 139, 156. Defendant asserts that Plaintiff was terminated from his position solely based on the handling of a theft incident and that Plaintiff would have been terminated from his position regardless of his military status. Docket Document No. 125.

Section 4316(c) of USERRA provides that "a person who is reemployed by an employer shall not be discharged from such

Civil No. 05-1181 (JAF)                                            -16-

employment, except for cause within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days." 38 U.S.C. § 4316(c). "Cause" as used in Section 4316(c) is not defined in USERRA, but it is to be liberally construed and strictly enforced for the benefit of those who left private life to serve their country. <u>Alabama Power Co.</u>, 431 U.S. at 581; H.R.Rep. No. 103-65 (1993); <u>Duarte v. Agilent Techs.</u>, 366 F. Supp. 2d 1039, 1046 (D. Colo. 2005). The test which must be applied is whether or not the discharge by the employer was a reasonable one under the circumstances. <u>Duarte</u>, 366 F. Supp. 2d at 1046 (citing <u>Kemp v. John Chatillon & Sons, Inc.</u>, 169 F.2d 203, 206 (3d Cir. 1948)).

Defendant asserts that Plaintiff was terminated because of his poor supervision of two Rimco employees who stole a tool from a Rimco client. <u>Docket Document Nos. 125, 152</u>. According to Defendant, Plaintiff was aware that Javier Vélez, one of the employees Plaintiff was tasked with supervising, had intentionally stolen a tool from a Rimco client, but hid this information from his own supervisors and led them to believe that the tool was taken by mistake. <u>Docket Document No. 125</u>. Plaintiff denies that he misled his supervisors, and points out that Maldonado was involved in the theft investigation and had access to the same information as Plaintiff. <u>Docket Document No. 139</u>. Plaintiff further contends that non-military employees of Rimco have committed far worse acts

than Plaintiff - including appropriating checks meant for another party, and causing a motor vehicle accident that resulted in substantial property loss - that did not result in their termination. Id.

The issue at hand is whether Plaintiff's handling of the theft incident caused his termination or whether Plaintiff's National Guard membership substantially influenced Defendant's decision. Figueroa Reyes, 389 F. Supp. 2d at 212. "When an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not the court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hill v. Michelin N. Am., Inc., 252 F.3d 307 (4th Cir. 2001). However, given the persistent questioning of Plaintiff regarding his military duties and whether he could abandon them, a triable issue of fact has been raised as to Defendant's true motivation in terminating Plaintiff. Given that USERRA and its predecessor statutes are to be liberally construed for the benefit of those who left private life to serve their country, we must leave the question of Defendant's intent in terminating Plaintiff for a jury to decide. Alabama Power Co., 431 U.S. at 584. As such, Defendant's motion for summary judgment is denied. Docket Document No. 125.

**IV.**

**Conclusion**

Civil No. 05-1181 (JAF)                                                    -18-

In accordance with the foregoing, we **GRANT** in part and **DENY** in part Defendant's motion for summary judgment. <u>Docket Document Nos. 125, 152</u>. Of Plaintiff's original complaint, only his wrongful termination charge contained in Count I survives.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 12th day of September, 2006.

                                        S/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U. S. District Judge